## AFFIDAVIT

I, Giancarlo DiGenova, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I submit this affidavit to establish probable cause to believe that on or about March 13, 2018, Cameron Weaver violated 21 U.S.C. §§ 841(a) and 841(b)(1)(C) by knowingly and intentionally possessing with intent to distribute fentanyl and cocaine base, both Schedule II controlled substances.

2.      I am a Detective Sergeant with the Vermont State Police, and am currently assigned to the Vermont Drug Task Force. I have been a trooper for over six years. In connection with my duties and responsibilities, I have received extensive training in the field of narcotics investigation and enforcement, both formal and informal. I completed the 26-week training program provided by the Vermont Criminal Justice Academy, which includes instruction in the investigation of various criminal offenses including drug crimes. I have also completed the PACE interdiction school, and a two-week narcotics school taught by DEA at the Massachusetts State Police Academy.

3.      I have previously participated in investigations relating specifically to the possession and distribution of heroin, fentanyl, and cocaine base. I have participated in various aspects of investigatory work, including undercover surveillance and undercover narcotics purchases. I have participated in several narcotics-related arrests and the execution of many narcotics-related search warrants. I have written affidavits in support of search and arrest warrants, and frequently utilized the services of informants and other confidential sources of information.

4.      The information contained within this affidavit is based upon my personal

observations and knowledge, my training and experience, as well as information that has been conveyed to me by other law enforcement officers. The following either is known to me personally or has been related to me by persons having direct knowledge of the events described below, including other law enforcement officers involved in this investigation.

## PROBABLE CAUSE

5. During the week of March 11, 2018, the Vermont Drug Task Force began an investigation into the distribution of heroin and crack cocaine in the Chittenden County area by an individual named Cameron Weaver. The investigation occurred with the use of a Cooperating Individual ("CI"). The CI advised that he/she could purchase drugs from a person it knew as "K" who was subsequently identified as Weaver. The CI was voluntarily working with the Vermont Drug Task Force for consideration on pending criminal charges. CI has prior convictions for Petit Larceny, Vehicle Operation: Attempting to Elude, and Leaving the Scene of an Accident.

6. In an interview, CI informed Vermont State Police Detective Neil Carey that CI had been purchasing heroin and crack cocaine from "K" and "K's" associate "G" for approximately 2 years. CI stated that when he/she first began purchasing drugs from "K," CI would regularly buy approximately 40g of crack cocaine and 40 bundles of heroin. CI was typically fronted the product and would then sell the drugs and return to "G" or "K" with the money. CI advised that he/she eventually fell into debt with Weaver and "G" at which point they limited CI to 10g of crack cocaine and 10 bundles of heroin for $1500.00. CI stated that he/she had been doing this on an almost daily basis for the last few months.

7. CI advised Det. Carey that he/she would be able to set up a controlled purchase for the 10g of crack and the 10 bundles of heroin for $1500.00. Det. Carey met CI at a

2

predetermined location where CI was searched and no contraband was found. CI had $500.00 in its possession, which Det. Carey held for the duration of the purchase. Det. Carey was present while CI placed a call to Weaver at the phone number 802-355-6475. A male identified by the CI as "K" answered the phone. "K" advised CI that he was waiting to hear from another customer so he wouldn't have to make multiple trips. A short while later, a male who the CI again identified as "K" called using the 802-355-6475 number, and advised CI to meet him at a specific location in the Burlington Area. Det. Carey provided CI with $1500.00 in serialized Task Force funds.

8.      Det. Carey drove CI to the area of the meet and watched him/her walk to the location. I was conducting surveillance of the meeting location, and observed CI get into the front passenger seat of a light colored Jeep Grand Cherokee bearing Wisconsin registration 508WMJ. Vermont Drug Task Force members followed the vehicle to a nearby location where CI exited the vehicle. After CI exited the Jeep Grand Cherokee, CI called Det. Carey and advised him that the transaction had occurred. Det. Carey picked up CI, and CI handed Det. Carey a plastic bag containing 10 bundles of a substance packaged similar to the manner in which heroin is typically packaged, and 10 baggies containing a white rocky substance similar to the manner in which crack cocaine is packaged. The bundles of suspected heroin were stamped "DIE HARD."

9.      Det. Carey then informed me that he had retrieved the suspected drugs from the CI. I then requested that South Burlington Police Officer Aaron Dince initiate a traffic stop of the Jeep Grand Cherokee from which CI had exited shortly before. During the timeframe between CI exiting the Jeep Grand Cherokee and the stop by Officer Dince, the vehicle was under constant surveillance by members of the investigative team. None of the surveillance

officers observed anyone exit or enter the Jeep Grand Cherokee after the CI had departed the vehicle.

10. Officer Dince conducted a traffic stop of the Jeep Grand Cherokee. The driver of the vehicle was alone in the vehicle at the time of the stop. The driver of the Jeep Grand Cherokee provided a Pennsylvania Identification Card that identified him as Cameron Weaver.

11. While the traffic stop occurred, CI provided Det. Carey with a sworn recorded statement advising that he/she purchased the 10g of suspected cocaine base and 10 bundles of suspected heroin from "K" with the $1500.00 provided by the Drug Task Force. Det. Carey showed CI a photo from the Pennsylvania Identification card provided to Officer Dince by Weaver. CI identified the photo as the man he/she knew to be "K".

12. Vermont State Police Trooper Thomas Howard advised me that during the search incident to Weaver's arrest, Howard located $4,700.00 in Weaver's left jacket pocket. Officer Dince told me that he located multiple bundles of what appeared to be heroin in Weaver's right jacket pocket. These bundles were also stamped "DIE HARD."

13. A search of the Jeep driven by Weaver yielded an additional 8.3g of a white rocky substance that appeared to be cocaine base, along with the $1500.00 in recorded Task Force Funds.

14. The crack cocaine from the controlled purchase weighed approximately 7.3g with packaging, and field-tested positive for cocaine base. The substance thought to be heroin from the controlled purchase field-tested positive for fentanyl, and totaled 150 bags.

15. The 8.3 g of suspected cocaine base seized from the car and the 450 bags of suspected fentanyl seized from Weaver's coat pocket were not field-tested. A total of $4,738.00 was seized from Weaver's person, excluding the $1500.00 in recovered buy money. The total

amount of drugs seized from the controlled purchase, search of Weaver's person, and search of Weaver's vehicle was approximately 15.6g crack cocaine and approximately 615 bags of apparent fentanyl.

## CONCLUSION

16. Based on the foregoing, I submit that probable cause exists to believe that on or about March 13, 2018, Cameron Weaver violated 21 U.S.C. §§ 841(a) and 841(b)(1)(C) by knowingly and intentionally possessing with the intent to distribute fentanyl and cocaine base, both Schedule II controlled substances.

Respectfully submitted,

_____
Giancarlo DiGenova
Detective Sergeant
Vermont State Police

Subscribed and sworn to before me on March 14, 2018.

_____
John M. Conroy
United States Magistrate Judge